IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| The Princeton Excess and Surplus Lines Insurance Co., | Case No. 1:21CV1981 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| Nancy Caraballo, et al., | MEMORANDUM OPINION AND |
| Defendants | ORDER |

Currently pending is Plaintiff/Counter-Defendant The Princeton Excess and Surplus Lines Insurance Company's ("PESLIC") Motion to Dismiss the Amended Counterclaim of Defendant/Counter-Claimant Michelle Rodriguez, as the Administrator of the Estate of Jordan Rodriguez ("the Estate"). (Doc. No. 99.) The Estate filed an Opposition to PESLIC's Motion, to which PESLIC replied. (Doc. Nos. 101, 102.) For the following reasons, PESLIC's Motion to Dismiss Counterclaims (Doc. No. 99) is GRANTED.

I.  Relevant Background[1]

On October 19, 2021, PESLIC filed a Complaint for Declaratory Judgment in this Court against the Estate, Nancy Caraballo, Catholic Charities Corporation, and The Roman Catholic Diocese of Cleveland, Ohio. (Doc. No. 1.) In Count I, PESLIC seeks declaratory relief regarding a settlement agreement between Caraballo and the Estate in connection with an underlying state court action involving the death of five-year old Jordan Rodriguez. (*Id.*) Relevant herein, PESLIC alleges

---

[1] The Court has set forth the factual allegations and procedural history of this matter in several lengthy Memorandum Opinions & Orders and will not repeat the entirety of that background information herein. *See, e.g.,* Doc. Nos. 65, 92, 93. Familiarity with this Court's previous Opinions is presumed.

that the settlement agreement between Caraballo and the Estate constitutes a material breach of two insurance policies issued by PESLIC to Caraballo's former employer, Catholic Charities, because Caraballo failed to either (1) obtain PESLIC's consent before entering into that settlement agreement, or (2) obtain PESLIC's consent to assign her right to indemnification under the insurance policies at issue to the Estate.[2] (*Id*.) The Estate filed a Motion to Dismiss, which the Court denied in a Memorandum Opinion & Order issued on June 28, 2022. (Doc. No. 32.)

On July 12, 2022, the Estate filed an Answer and Counterclaims. (Doc. No. 36.) Counterclaim I was against PESLIC and captioned "Breach of Contract." (*Id*.) Therein, the Estate alleged that Caraballo (1) is an "Insured" under one of the policies issued by PESLIC "as she was an employee of Catholic Charities in 2017, acting within the scope of her employment for all relevant purposes"[3] and (2) "unintentionally (negligently) was a cause of Jordan Rodriguez's death and/or other injuries and accordingly caused him to sustain a 'Bodily Injury' through an 'Occurrence' pursuant to the Policy's definitions." (*Id*. at ¶¶ 43, 44.) The Estate further alleged that "[u]nder well-established and existing Ohio case law, Caraballo was entitled to enter into the settlement with [the Estate] and assign her right to indemnification under the Policy, without the consent of PESLIC, due to PESLIC's refusal to timely accept coverage on behalf of Carballo, or contest that Caraballo was entitled to coverage under the Policies." (*Id*. at ¶ 45.) The Estate claimed that PESLIC "has refused to indemnify Caraballo for the $10,000,000 she is owed pursuant to the [2017] Policy" and, therefore,

---

[2] The policies at issue provide that: 'You must obtain our prior written approval before offering or agreeing to pay an amount which is in excess of the Retained Limit in order to settle any Claim under [the applicable] Coverage Part.'" (Doc. No. 1-3 at PageID# 98.) Additionally, the policies provide that: "Your rights and duties under this insurance may NOT be transferred without our written consent except in the case of death of an individual insured.'" (*Id*. at PageID# 72.)

[3] The Court will refer to this insurance policy herein as "the 2017 Policy."

2

the Estate is entitled to a Declaration that PESLIC's refusal to indemnify Carballo constitutes a breach of its contractual obligations, and PESLIC is obligated to indemnify Caraballo for the full amount of $10,000,000.00. (*Id*. at ¶ 49.)

PESLIC moved to dismiss the Estate's Counterclaim I on the grounds that Caraballo had breached the Policies' anti-assignment and consent-to-settle provisions. (Doc. No. 42.) On January 17, 2023, this Court issued a lengthy Memorandum Opinion & Order granting PESLIC's Motion. (Doc. No. 65.) Therein, the Court first found that, unless an exception applies, Caraballo's purported assignment of her right to seek indemnification under the 2017 Policy is not valid because Caraballo failed to obtain PESLIC's consent to assign her rights under that Policy to the Estate. (*Id*.) The Court then found that the exception set forth in *Ward v. Custom Glass & Frame*, 663 N.E.2d 734 (Ohio App. 8th Dist. 1995) and *Patterson v. Cincinnati Ins. Co.,* 91 N.E.3d 191 (Ohio App. 8th Dist. 2017) did not save the Estate's Counterclaim because the Estate failed to sufficiently plead that PESLIC maintained control of the underlying state court litigation while at the same time denying coverage. (*Id*.) After addressing (and rejecting) several other arguments raised by the Estate, the Court concluded that Caraballo's assignment is not valid, and that the Estate did not have standing to assert its breach of contract claim against PESLIC. (*Id*.)

The Estate then moved for leave to amend its Counterclaims to (1) reassert its claim for breach of contract against PESLIC; and (2) assert a new claim against PESLIC under Ohio Rev. Code § 3929.06 "based on PESLIC's failure to satisfy the settlement in the underlying case." (Doc. No. 68.) On June 7, 2023, this Court issued a Memorandum Opinion & Order denying the Estate leave to

reassert its breach of contract Counterclaim but granting the Estate leave to amend to assert a Counterclaim against PESLIC under Ohio Rev. Code § 3929.06. [4] (Doc. No. 92.)

The Estate filed its Amended Counterclaim on June 20, 2023. (Doc. No. 98.) The factual allegations in the Estate's Amended Counterclaim (Doc. No. 98 at ¶¶ 8-40) are identical to those set forth in its original Counterclaim (Doc. No. 36 at ¶¶ 8-41.) These factual allegations are summarized in the Court's January 17, 2023 Opinion and will not be repeated herein. (Doc. No. 65.) The Estate's Amended Counterclaim then sets forth a new claim, under Count I, for a Declaratory Judgment pursuant to Ohio Rev. Code § 3929.06. (Doc. No. 98 at ¶¶ 41-52.)

In that Count, the Estate alleges that the Cuyahoga County Court of Common Pleas (hereinafter "the state court") issued a "Consent Judgment and Stipulations of Certain Facts" on December 19, 2022 regarding the settlement agreement between the Estate and Caraballo. (*Id.* at ¶ 43.) *See also* Doc. No. 98-1. The Estate alleges that, within the Consent Judgment, the state court entered a civil judgment against Caraballo for a total of $36 million with payment due to the Estate.

---

[4] Ohio Rev. Code § 3929.06 allows a judgment creditor to bring a supplemental complaint directly against an insurance company if it believes the insurance company is required to pay the judgment. Specifically, that statute provides, in relevant part, as follows: "(A)(1) If a court in a civil action enters a final judgment that awards damages to a plaintiff for injury, death, or loss to the person or property of the plaintiff or another person for whom the plaintiff is a legal representative and if, at the time that the cause of action accrued against the judgment debtor, the judgment debtor was insured against liability for that injury, death, or loss, the plaintiff or the plaintiff's successor in interest is entitled as judgment creditor to have an amount up to the remaining limit of liability coverage provided in the judgment debtor's policy of liability insurance applied to the satisfaction of the final judgment.

(2) If, within thirty days after the entry of the final judgment referred to in division (A)(1) of this section, the insurer that issued the policy of liability insurance has not paid the judgment creditor an amount equal to the remaining limit of liability coverage provided in that policy, the judgment creditor may file in the court that entered the final judgment a supplemental complaint against the insurer seeking the entry of a judgment ordering the insurer to pay the judgment creditor the requisite amount. Subject to division (C) of this section, the civil action based on the supplemental complaint shall proceed against the insurer in the same manner as the original civil action against the judgment debtor." Ohio Rev. Code §§ 3929.06(A)(1) and (2).

(Doc. No. 98 at ¶ 44.)  The Estate further alleges that the "underlying judgment provided an assignment of the amount owed to Catholic Charities," as follows:

> In further consideration the parties agree that [the Estate] will not attempt to collect any portion of this judgement against Nancy Caraballo individually, and that Nancy Caraballo further agrees to assign and take all steps necessary to cause to assign to [the Estate] any and all claims she may have for indemnification, and bad faith against Catholic Charities and each of its applicable insurers.

(*Id*. at ¶ 45.)  The Estate alleges that "the underlying judgment is valid in its entirety."  (*Id*. at ¶ 46.)

The Estate next alleges that Caraballo is an "Insured" under the 2017 Policy and that, therefore, "Catholic Charities is required to indemnify Caraballo and pay the Estate according to the underlying judgment and O.R.C. 3929.06."  (*Id*. at ¶¶ 47-48.)  The Estate alleges that, because more than thirty days has passed and Catholic Charities has refused to comply with that judgment, "O.R.C. 3929.06 allows [the Estate] to seek entry of said judgment in the present matter."  (*Id*. at ¶¶ 49-51.)  Thus, the Estate "requests a declaration that the underlying judgment issued by [the state court] be enforced onto PESLIC."  (*Id*. at ¶ 52.)

On June 28, 2023, PESLIC filed a Motion to Dismiss the Estate's Amended Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 99.)  The Estate filed a Brief in Opposition on July 28, 2023, to which PESLIC replied on August 8, 2023.  (Doc. Nos. 101, 102.)

**II.**  **Standard of Review**

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff.  *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a

5

speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679.

**III.    Analysis**

In its Motion, PESLIC argues that the Estate's Amended Counterclaim under Ohio Rev. Code § 3929.06 "fails for the same reasons" as its original Counterclaim for breach of contract.  (Doc. No.

99.) Specifically, PESLIC maintains that it is undisputed that (1) the 2017 Policy required Caraballo to obtain PESLIC's consent before entering into the $36 million settlement agreement with the Estate; and (2) Caraballo failed to do so. (*Id*.) PESLIC asserts that, under Ohio law interpreting § 3929.06, the Estate's rights under the Policy are "entirely derivative of Caraballo's and because Caraballo materially breached the Policy without any valid excuse, the Court should dismiss the Estate's direct action claim [under Ohio Rev. Code § 3929.06] for the same reasons it dismissed the Estate's original counterclaim." (*Id.* at p. 7-8.) PESLIC further notes that the Estate has not sufficiently plead "any valid legal excuse for Caraballo's breach of the Policy," including any facts establishing the exception set forth in *Ward, supra* and *Patterson, supra*. (*Id.* at pp. 9-11.) Lastly, PESLIC argues that, given that the Estate has had almost seven months to conduct discovery and was already provided an opportunity to amend, this Court should now dismiss the Estate's Amended Counterclaim with prejudice. (*Id*. at pp. 11-12.)

In response, the Estate argues that PESLIC's Motion should be denied because the Estate was not required to plead sufficient facts to rebut an affirmative defense. (Doc. No. 101.) Specifically, the Estate maintains that PESLIC's Motion is based on its "consent-to-settle affirmative defense and that the Estate failed to properly plead the *Ward* exception to that defense.'" (*Id.* at p. 8.) The Estate maintains that PESLIC's argument is premature because "the Estate is not required to disprove every potential coverage defense in a complaint." (*Id.*) Rather, the Estate argues, "the purpose of litigation is to address such issues through procedures such as discovery." (*Id*.) The Estate maintains that it had no obligation to anticipate that PESLIC would argue the "consent-to-settle affirmative defense" and, therefore, no duty to properly plead any exception to that defense in its Amended Counterclaim." (*Id*. at p. 9.)

7

In its Reply Brief, PESLIC argues that "[n]umerous Sixth Circuit decisions confirm that 'there is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law.'" (Doc. No. 102 at p. 1) (citing *Est. of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920 (6th Cir. 2013)). PESLIC asserts that the Estate's claim under Ohio Rev. Code § 3929.06 is clearly "predicated on a settlement obtained in breach of the Policy's consent-to-settle provision" and, therefore, the Estate was required to plead sufficient facts establishing an exception to that defense. (*Id*. at pp. 1-2, 4-5, 6.) Lastly, PESLIC urges the Court to reject the Estate's argument that dismissal is premature, noting that "[t]he Estate had the benefit of seven full months of discovery before filing the Amended Counterclaim" during which the Estate deposed Caraballo's attorney and received hundreds of documents from PESLIC. (*Id*. at p. 7.)

"Courts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." *Est. of Barney*, 714 F.3d at 926. However, the Sixth Circuit has explained that "[t]here is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law." *Id*. (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009)). *See also Estate of Barney*, 714 F.3d at 926 (finding that "'[a] motion to dismiss can be premised on an affirmative defense," provided that "'the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief.'") (quoting *Marsh v. Genetech, Inc*., 693 F.3d 546, 555 (6th Cir. 2012)). *See also Chapman v. JPMorgan Chase Bank, N.A.,* 651 Fed. Appx. 508, 513 (6th Cir. 2016); *Houston v. People Ready, Inc*., 618 F.Supp.3d 771, 774 (W.D. Tenn. 2022).

"[W]hen evaluating an affirmative defense in a motion to dismiss, a court must … only look to the facts alleged in the plaintiff's complaint [or counterclaim], albeit alongside the legal elements

8

of the affirmative defense raised in the defendant's motion to dismiss." *Goins v. Saint Elizabeth Medical Center*, 640 F.Supp.3d 745, 751 (E.D. Ky. 2022) (citing *Hensley Mfg.*, 579 F.3d at 613). "If the elements of an affirmative defense are met by the factual allegations contained in the complaint [or counterclaim], then the district court may grant the motion to dismiss." *Id. See also Estate of Barney*, 714 F.3d at 926 (explaining that "if the plaintiff's complaint contains facts which satisfy the elements of the defendant's affirmative defense, the district court may apply the affirmative defense."); *Kriepke v. Wayne State University*, 807 F.3d 768, 784 (6th Cir. 2015) ("Where an affirmative defense appears 'clearly on the face of the complaint,' however, a court may dismiss a complaint under Rule 12(b)(6) for failure to state a claim.")

Here, the Estate argues (and PESLIC does not dispute) that PESLIC's "consent-to-settle" defense (i.e., its argument that the settlement agreement between Caraballo and the Estate is invalid under the 2017 Policy because Caraballo did not first obtain PESLIC's consent) constitutes an affirmative defense. Thus, the Court may only grant dismissal on this basis if the Estate's own allegations contain facts which satisfy the elements of this defense, i.e., "where the undisputed facts conclusively establish [the] affirmative defense as a matter of law." *Hensley Mfg.*, 579 F.3d at 613. *See also Estate of Barney*, 714 F.3d at 926.

For the following reasons, the Court finds that the undisputed facts plead by the Estate in its Amended Counterclaim (as well as the Exhibits attached thereto) conclusively establish PESLIC's consent-to-settle defense. The Estate expressly and repeatedly references the 2017 Policy between PESLIC and Catholic Charities in its Amended Counterclaim. (Doc. No. 98 at ¶¶ 34-40, 47, 48.) The Estate alleges that Caraballo was an "Insured" under that Policy because she was employed by Catholic Charities in 2017 and was "acting within the scope of her employment for all relevant

9

purposes." (*Id*. at ¶ 47.) The Estate further alleges Caraballo and the Estate engaged in settlement negotiations in the underlying state court action and that "[a]t no time during the entire time period of [the Estate's] attempts to negotiate with Caraballo . . . did Caraballo's putative insurer, PESLIC, inform either Caraballo or the Estate of their position regarding coverage." (*Id.* at ¶ 26.) Rather, the Estate alleges that PESLIC "engaged in a bad faith attempt to control the litigation without accepting coverage." (*Id*.) The Estate then alleges that:

> 28. Faced with the prospect of proceeding to trial as the sole Defendant **without insurance coverage** for her negligent conduct and a potential judgment rendered against her for tens of millions of dollars, Caraballo engaged in good faith settlement discussions with [the Estate].
>
> 29. On or before September 29, 2021, the parties reached an agreement as to settlement, specifically reaching agreement as to all material terms, and in fact all terms. (A copy of said agreement is attached as Ex. A).

(*Id*. at ¶¶ 28, 29) (emphasis added).

In addition, the Settlement Agreement (which is attached to the Amended Counterclaim at Doc. No. 98-1) sets forth certain "facts" which were "represented to [the Estate] by Nancy Caraballo" and were "fundamental" to the Estate's "willingness to enter the instant settlement agreement." (Doc. No. 98-1 at p. 5.) Among these facts is the following: "Nancy Caraballo received a reservation of rights letter from [PESLIC], pursuant to Policy Number: N2-A3-RL-0000008-10 [i.e., the 2017 Policy], and subsequent correspondence clarifying [PESLIC's] position regarding its reservation of rights, wherein [PESLIC] failed to ever warrant or otherwise indicate to Nancy Caraballo that Plaintiff's claims against her, if proven, would be indemnified under their insurance policy." (*Id*.)

The clear import of the above allegations is that PESLIC did not participate in the settlement negotiations between the Estate and Caraballo and did not agree to the settlement agreement reached between those two parties. This is notable because, as discussed *supra*, it is undisputed that the 2017

Policy expressly provides that: "'You must obtain our prior written approval before offering or agreeing to pay an amount which is in excess of the Retained Limit in order to settle any Claim under [the applicable] Coverage Part.'" [5] (Doc. No. 1-3 at PageID# 98.) Thus, the Court finds that the Estate's "own allegations show that a defense exists that legally defeats the claim for relief." *Marsh*, 693 F.3d at 555. Stated differently, the Court finds that the undisputed facts conclusively establish PESLIC's consent-to-settle affirmative defense as a matter of law.[6] *See Hensley Mfg.*, 579 F.3d at 613; *Chapman,* 651 Fed. Appx. at 513.

Therefore, to survive dismissal, the Estate was required to plead sufficient facts in its Amended Counterclaim to establish an exception to PESLIC's consent-to-settle affirmative defense, such as the exception set forth in *Ward, supra* and *Patterson, supra*. The Estate does not even attempt to argue that it has done so. And, indeed, it could not, as the factual allegations set forth in the Amended Counterclaim are identical to the factual allegations in the Estate's original Counterclaim which this Court already dismissed on the grounds that it failed to sufficiently plead the *Ward/Patterson* exception. Thus, the reasoning and analysis set forth in this Court's January 17,

---

[5] The 2017 Policy is attached as an Exhibit to PESLIC's Complaint as Doc. No. 1-3. The Court may consider this Policy in resolving PESLIC's Motion to Dismiss because the Policy is part of the record of the case, referred to in the Estate's Amended Counterclaim, and central to the Estate's claim herein. *See Bassett*, 528 F.3d at 430 (finding that, in ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."). *See also Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018).

[6] The Court further notes that, under the circumstances presented herein, the Estate was on notice that PESLIC intended to assert its consent-to-settle affirmative defense. This defense is readily apparent from the Complaint and is, in fact, the focus of PESLIC's declaratory judgment claim in Count I. Indeed, PESLIC moved to dismiss the Estate's original Counterclaim on this very basis. Thus, the Estate had every reason to anticipate that PESLIC would assert this affirmative defense. And yet, despite having the opportunity to amend to add its direct-action claim under Ohio Rev. Code § 3929.06 and the benefit of nearly seven months of discovery, the Estate nonetheless failed to include any additional factual allegations addressing this affirmative defense in its Amended Counterclaim.

2023 Opinion regarding the pleading deficiencies in the Estate's original Counterclaim (Doc. No. 65 at pp. 17- 26) applies equally herein.

The Estate, however, argues (summarily and without citation to authority) that it need not plead sufficient facts to counter PESLIC's consent-to-settle affirmative defense because "the Estate's Amended Counterclaim is no longer dealing with issues regarding the settlement agreement itself, rather, the Estate's claims are based upon a consent judgment granted to them." (Doc. No. 101 at p. 9, fn 1.)  Thus, although somewhat unclear, the Estate appears to maintain that whether Caraballo obtained PESLIC's consent to settle is immaterial because, "under ORC 3929.06(A)(1), the Estate can now use that [consent] judgment to demand payment from PESLIC as the insurer." (*Id.*)

The Estate's argument is without merit.  Ohio Rev. Code § 3929.06(C)(2) expressly provides that:

> In a civil action that a judgment creditor commences in accordance with divisions (A)(2) and (B) of this section against an insurer that issued a particular policy of liability insurance, **the insurer has and may assert as an affirmative defense against the judgment creditor *any* coverage defenses that the insurer possesses and could assert against the holder of the policy** in a declaratory judgment action or proceeding under Chapter 2721. of the Revised Code between the holder and the insurer.

Ohio Rev. Code § 3929.06(C)(1) (emphasis added).  Interpreting this statute, Ohio courts have made clear that "the rights of the judgment creditor to collect under an insurance policy pursuant to Section 3929.06 are not greater than that of the insured, and the insurer may raise *any defenses* it may have had against the insured in an action under Section 3929.06."  *Guyan International, Inc. v. Pro. Benefits Adm'rs, Inc.,* 2013 WL 1338194 at * 14 (N.D. Ohio March 29, 2013) (emphasis added).  *See also Elkins v. American International Special Lines Ins. Co.*, 611 F.Supp.2d 752, 758 (S.D. Ohio

12

2009) ("Section 3929.06 creates a subrogation action, wherein the injured party stands in the shoes of the insured against his or her insurer ..."). Indeed, as one state appellate court recently explained:

> According to the Supreme Court of Ohio, the judgment creditor's right "against the insurer, if any, is a derivative right implied in law by way of subrogation to the rights of the insured against the insurer." *Conold [v. Stern*, 138 Ohio St. 352, 365, 35 N.E.2d 133 (1941)]. As a result, "the right of a judgment creditor against the insurer can rise no higher than the rights of the insured judgment debtor against such insurer." *Id*. Thus, **if there is no coverage under the terms of the policy for the judgment debtor's liability, the insurer can raise those defenses against the judgment creditor.** *Estate of Heintzelman [v. Air Experts, Inc*., 126 Ohio St.3d 138, 931 N.E.2d 548, ¶ 11 (2010)].

*McCruter v. Travelers Home and Marine Ins. Co.,* 168 N.E.3d 1, 13 (Ohio App. 11th Dist. 2021) (emphasis added). *See also Sanderson v. Ohio Edison Co*., 635 N.E.2d 19, 23 (Ohio 1994) ("Generally, an insurer in a supplemental proceeding under R.C. 3929.06 has available to it any defense arising from the insured's failure, in the underlying action, to satisfy conditions in the insurance policy which are a prerequisite to indemnification.") (citing *Bennett v. Swift & Co.,* 163 N.E.2d 362 (Ohio 1959) and *Miller v. Jones*, 45 N.E.2d 106 (Ohio 1942)). [7]

Therefore, the fact that the Amended Counterclaim is brought pursuant to Ohio Rev. Code § 3929.06 does not excuse the Estate's failure to sufficiently plead an exception to PESLIC's consent-to-settle affirmative defense. Under the authority cited above, the Estate (as judgment creditor) "stands in the shoes of the insured" and its rights under the 2017 Policy are no greater than Caraballo's would have been. Ohio law is clear that PESLIC may assert Caraballo's failure to obtain PESLIC's

---

[7] The Estate's reliance on *Sanderson v. Ohio Edison Co*., 635 N.E.2d 19 (Ohio 1994) is both unexplained and misplaced. In *Sanderson*, the Ohio Supreme Court found that: "Fairness and justice demand that an insurer that breaches its duty to defend an insured be estopped from asserting, as a defense in a supplemental proceeding under R.C. 3929.06, that the insured failed to obtain the consent of the insurer to settle the action. Neither the insured nor the injured party is required to perform conditions in a policy made vain and useless by reason of the insurer's prior breach." *Id*. at 24. Here, however, it is undisputed that the 2017 Policy does not include a duty to defend. *See* Doc. No. 1-3 at PageID# 98 (stating that PESLIC "has no duty to defend a Claim against an Insured.") Nor has the Estate otherwise sufficiently pled a "prior breach" by PESLIC.

13

consent to the settlement agreement as a defense to the Estate's Amended Counterclaim. *See, e.g., Miller*, 45 N.E.2d at Syllabus, ¶ 1 ("The failure of an insured to comply with the provisions of a policy of indemnity insurance requiring the cooperation of the insured in the preparation and trial of any claim or suit against him, and not to make settlement thereof except at his own cost without the written authorization of the insurer, constitutes a good and valid defense in a supplemental proceeding to recover from the insurer …"). Because the Estate failed to plead sufficient facts demonstrating an exception to that defense, the Court finds that the Estate has failed to plead a plausible claim for relief under Ohio Rev. Code § 3929.06. The Estate's Amended Counterclaim is, therefore, subject to dismissal.

Lastly, PESLIC argues that this Court should dismiss the Estate's Amended Counterclaim with prejudice. (Doc. No. 99 at pp.11-12.) PESLIC asserts that dismissal with prejudice is appropriate because, before filing its Amended Counterclaim, the Estate had nearly seven months to conduct discovery, during which time it received hundreds of pages of documents from PESLIC. (*Id*.) PESLIC further notes that the Estate had received the benefit of this Court's January 17, 2023 Opinion identifying the deficiencies in its original Counterclaim and, yet, the Estate failed to remedy these deficiencies in its Amended Counterclaim. (*Id*.) PESLIC argues that, under these circumstances, the Estate should not be given another bite at the apple. (*Id*.) The Estate does not address this issue in its Brief in Opposition to PESLIC's Motion. (Doc. No. 101.)

The Sixth Circuit has held that "[d]ismissal with prejudice and without leave to amend is only appropriate when it is clear on *de novo* review that the complaint could not be saved by an amendment." *Stewart v. IHT Ins. Agency Group, LLC*, 990 F.3d 455, 457 (6th Cir. 2021). *See also Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015). That being said, "a district court does not

abuse its discretion by failing to grant leave to amend where the plaintiff has not sought leave and offers no basis for any proposed amendment*." United States ex rel. Harper v. Muskingum Watershed Conservancy District,* 739 Fed. Appx. 330, 335 (6th Cir. 2018) (citing *Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377, 387 (6th Cir. 2017) and *Tucker v. Middleburg-Legacy Place, LLC,* 539 F.3d 545, 551 (6th Cir. 2008)).

For the following reasons, and in the exercise of its discretion, the Court finds that dismissal with prejudice is appropriate. The pleading amendment deadline in this matter expired over a year ago, on September 6, 2022. Fact discovery concluded on February 14, 2023, except for the deposition of PESLIC's claims handler (Raymond Bonnani) which was required to be taken by no later than September 4, 2023. PESLIC had the opportunity to amend its Counterclaim with the benefit of discovery yet failed to include any additional factual allegations to rebut PESLIC's consent-to-settle affirmative defense. Moreover, although PESLIC expressly asked this Court to dismiss the Estate's Amended Counterclaim with prejudice and briefed the issue in its Motion, the Estate failed to address this issue in its Brief in Opposition or otherwise ask this Court for yet another opportunity to amend.

Under these circumstances, and in the absence of any meaningful argument to the contrary, the Court finds that dismissal with prejudice is appropriate.

**V.     Conclusion**

For all the reasons set forth above, PESLIC's Motion to Dismiss the Estate's Amended Counterclaim with Prejudice (Doc. No. 99) is GRANTED.

**IT IS SO ORDERED.**

Date:  September 19, 2023

   *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE